SRM

# United States District Court
# District of Arizona

**George Medina,**
Petitioner
-vs-
**Judy Friego, et al.,**
Respondent(s)

CV-05-2514-PHX-JAT (JI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 22, 2005 (#1). On April 17, 2006, Respondents filed their Response (#16). Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

## A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the evidence as follows:

> Appellant dated the victim, Jessie, and fathered her child, Emily. When the parties ceased dating in March 2001, Jessie and Emily moved out of appellant's parents' house where they had been residing with appellant and moved into Jessie's parents' house. Appellant and Jessie were in regular contact because appellant often visited with Emily.
> Jessie testified at trial that after the parties broke up, appellant

made several attempts to get back into a romantic relationship with her. She recalled one specific attempt shortly before she was shot in which appellant phoned her and told her that he wanted to marry her and that he planned on joining the Marines. She testified, "I told him that I didn't want to get together with him and that I was tired of his abuse." Jessie also testified that she had begun dating another man after she broke up with appellant, and that she had been concerned about appellant's reaction.

Jessie's friend's husband, Juan Encinas Hernandez, testified that he had had a conversation with appellant weeks before the shooting in which appellant asked him if Jessie had a new boyfriend. Juan said that he did not know whether Jessie was dating anyone. Appellant told Juan that he did not want his child to have a stepfather, and that if he saw Jessie with another man he would kill them. Appellant also asked Juan if he had an ID that appellant could borrow to buy a gun, ostensibly for self-protection. Juan told appellant he did not have an ID.

Over the Labor Day weekend of August 31—September 3, 2001, Jessie and her boyfriend arranged to be out of town. Appellant agreed to watch Emily while Jessie was away. When he questioned her regarding with whom she was leaving, she told him she was going with a coworker.

When Jessie arrived home late at night at the conclusion of the weekend, she put her sleeping daughter to bed and returned outside to lock the gate. After she locked the gate and headed back towards the front door of the house, she heard a rustling noise that caused her to pause and look around. She testified that she saw appellant running towards her and aiming a gun in her direction. She heard numerous gun shots, and she knew that she had been hit by the bullets. Jessie was rendered a paraplegic as a result of the shooting.

(Exhibit WW, Memorandum Decision at 2-3.)[1]

## B. PROCEEDINGS AT TRIAL

Petitioner  was charged alternatively with one count of attempted first-degree murder, and  one count of aggravated assault with a dangerous weapon.  (Exhibit A, Indictment.) Counsel John Taradash was appointed to represent Petitioner at trial.  Petitioner filed a motion to dismiss the indictment as duplicitous (Exhibit C), and a motion to strike the allegation of premeditation on the basis that the Arizona courts had previously ruled that the provision defining premeditation was unconstitutionally vague (Exhibit D.)  The state moved to amend the indictment to allege the charges in the conjunctive as well as the disjunctive.  (Exhibit E.)

Petitioner proceeded to trial on March 25, 2002, but Petitioner's first trial ended in a mistrial when the jurors were unable to agree on a verdict.  (Exhibit F, M.E. 3/25/02; Exhibit

---

[1]  Exhibits to the Answer (#16) are referenced herein as "Exhibit ___".

1   V, M.E. 4/4/02; Exhibit W, R.T. 4/4/02 at 22-23.)

2        Petitioner returned for retrial beginning on April 17, 2002.   (Exhibit AA, M.E.

3   4/17/02.)  During voir dire, trial counsel moved to strike juror Amy Baratta for cause, based

4   upon her objections to guns.  (Exhibit BB, R.T. 4/17/02, at 140-141.)  The trial court denied

5   that motion. (*Id.*)

6        The jury returned guilty verdicts on both the attempted first degree murder and the

7   aggravated assault counts.  (Exhibit MM, Verdicts; Exhibit OO, R.T. 4/25/02 at 4-5.)  A

8   Presentence Investigation Report was prepared (Exhibit PP), and Petitioner was sentenced to

9   concurrent sentences of 21 years on the attempted murder charge, and 15 years on the

10   aggravated assault charge.  (Exhibit QQ, Sentence.)

11

12   **C.  PROCEEDINGS ON DIRECT APPEAL**

13        Petitioner filed a direct appeal, and was represented on appeal by attorney Karen Noble,

14   deputy public defender, who raised the following three issues for review:

15           1.   Since Venire Person Amy Baratta voiced serious concerns
about remaining fair in a case such as this, involving guns, did the judge

16   abuse his discretion in failing to strike Ms. Baratta for cause?

17           2.   The only difference between first-degree murder and knowing
or intentional second-degree murder is premeditation.   The legislature
has  redefined  premeditation  so  that  it  no  longer  requires  actual

18   reflection.  Does this obliterate any meaningful difference between first
and second-degree murder, requiring the striking of premeditation from

19   the indictment, in effect dismissing the charge of first-degree murder?

20           3.   In a prosecution for first-degree murder, does the Arizona
statute defining premeditation, A.R.S. § 13-1101(1), violate due process
of law and the presumption of innocence by excusing the state from

21   proving "reflection"?

22   (Exhibit SS, Opening Brief at 7.)

23        In arguing the **first issue (juror strike),** Petitioner relied upon the Fifth Amendment's

24   Due Process clause, and the 6th and 14th Amendments, as well as the Arizona constitution.

25   (*Id.*  at 9.)  In his Reply Brief, Petitioner responded to arguments by the prosecution that

26   attacked state law holding that juror strike claims are not subject to harmless error analysis,

27   and noted that the state courts had rejected the Supreme Court's reasoning applying harmless

28   error analysis to similar federal claims.  Petitioner noted that Arizona, unlike the Federal

1   courts, recognized peremptory strikes as a "substantial important right" and that such holdings
2   are based on state procedural law, not federal constitutional law. (Exhibit UU at 5-8.)

3       In arguing the **second issue (premeditation in indictment)**, Petitioner relied upon
4   "Due Process" and quoted from the Arizona case, *State v. Thompson*, 201 Ariz. 273, 34 P.3d
5   382, 390 (App. 2001) which quotation refers to the U.S. Supreme Court's due process
6   decision in *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966). (Exhibit SS at 13-14.) Petitioner
7   also relied on the Supreme Court's harmless error standard in *Sullivan v. Louisiana*, 508 U.S.
8   275 (1993). (Exhibit SS at 17.) (*See also* Exhibit UU, Reply Brief at 12.)

9       Finally, Petitioner argued with regard to the **third issue (definition of premeditation)**
10  that the asserted errors resulted in a violation of "Due Process of Law under the 14th
11  Amendment to the United States Constitution." (Exhibit SS at 19.) In his Reply Brief,
12  Petitioner relied upon a number of federal cases, including *Sullivan v. Louisiana*, 508 U.S.
13  275 (1993) and *Herndon v. Lowery*, 301 U.S. 242 (1937).

14      The Arizona Court of Appeals found that the juror, Ms. Baratta, had not indicated she
15  could not remain impartial, and concluded that the trial court's acceptance of that statement
16  in deciding not to strike her was within the court's discretion. (Exhibit WW, Memorandum
17  Decision at 6.) The Court of Appeals collapsed Petitioner's two issues based upon
18  premeditation into a challenge to the jury instruction, and found that the trial court's
19  premeditation instruction was erroneous because it provided that "proof of actual reflection
20  is not required." However, the court found any error to be harmless based upon the substantial
21  evidence of actual reflection. (*Id.* at 8-9.)

22      The court found *sua sponte* that allowing the conviction on the lesser included crime
23  of aggravated assault resulted in a violation of the Arizona Rules concerning the joinder of
24  charges in the alternative. (*Id.* at 10-11.) Accordingly, Petitioner's conviction and sentence
25  on the aggravated assault charge was vacated, and his conviction and sentence on the attempted
26  murder were affirmed. (*Id.*)

27      Petitioner sought review by the Arizona Supreme Court (Exhibit ZZ), which was
28  summarily denied on November 24, 2003 (Exhibit AAA). The Order and Mandate issued

1   December 26, 2003 (Exhibit BBB).

2

3   **D. PROCEEDINGS ON POST-CONVICTION RELIEF**

4   **1.   First PCR Petition**

5       On December 29, 2003, Petitioner filed a Notice of Post-Conviction Relief, and

6   counsel was appointed to represent him.  (Exhibit CCC, Notice and M.E. 1/8/04.)  The public

7   defender's office moved to withdraw based upon the conflict of interest from an anticipated

8   ineffective assistance claim (Exhibit DDD).  The motion was granted, and substitute counsel

9   was appointed.  (*Id.*)  PCR counsel filed a notice indicating the completion of his review and

10  inability to find a colorable claim (Exhibit EEE, Motion).  Counsel was ordered to remain in

11  an advisory capacity, and Petitioner was granted an extension to file a *pro per* petition. (*Id.*

12  M.E. 5/3/4.)

13      On May 26, 2004, Petitioner filed *pro se* his first PCR Petition (Exhibit FFF).

14  Petitioner argued: (1)  that trial counsel was ineffective for failing to pursue copies of video

15  and audio tapes of Petitioner's interview; and (2) that a juror was sleeping during testimony and

16  his attorneys were aware of it but did nothing.  Petitioner's PCR petition was summarily denied

17  by an Order filed October 14, 2004 (Exhibit KKK).

18      Petitioner he did not seek review of that decision.  (Petition, #1 at 2.)

19

20  **2. Second PCR Petition**

21      On June 28, 2005, Petitioner filed a second Notice of Post-Conviction Relief seeking

22  relief on the basis of *Blakely v.  Washington*, 524 U.S. 296 (2004).  On June 29, 2005, the

23  trial court summarily dismissed the notice, on the basis that Petitioner's conviction was final

24  at the time of *Blakely*, and *Blakely* was not retroactive on collateral review.  (Exhibit OOO.)

25  Petitioner filed a Petition for Review on October 6, 2005 (Exhibit SSS, Petition), seeking

26  review of his *Blakely* claim.   That Petition was summarily denied on July 28, 2006.

27  (Supplemental Answer, #20, Exhibits.)

28

1    **E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

2        Petitioner commenced this federal proceeding by filing his Petition for Writ of Habeas

3    Corpus (#1) on August 22, 2005.  Petitioner's Petition is framed with two grounds for relief:

4        A.    Denial of due process based upon:

5             1.    the elimination of the distinction between first and second degree

6                   murder by removal of the reflection requirement from premeditation;

7             2.    dismissal of the lesser charge by the Arizona Court of Appeals,

8                   following Petitioner's conviction on both, was a violation  of double

9                   jeopardy;

10            3.    trial court's denial of motion to strike premeditation language from

11                  indictment;

12            4.    trial court's denial of motion to strike juror Amy Baratta for cause,

13                  requiring the use of peremptory strike;

14            5.    a defective definition of premeditation;

15            6.    ineffective assistance of counsel in failing to pursue evidence, *i.e.*

16                  surveillance of Petitioner's interrogation;

17            7.    jury misconduct;

18            8.    factors used to aggravate Petitioner's sentence were elements of the

19                  crime; and

20            9.    factors used to aggravate Petitioner's sentence were not found by the

21                  jury, as required by *Blakely v. Washington*, 524 U.S. 296 (2004).

22       B.    Violation of the Sixth Amendment based upon the prosecution's suppression of

23             surveillance tapes of Petitioner's interrogation.

24        The Petition included a Ground III, listing an Eighth Amendment, Cruel and Unusual

25   Punishment, claim based upon: (1) the aggravating factors being an element of the crime; (2)

26   the aggravated sentence was improper; and (3) the trial court determined the aggravating

27   sentence and imposed the aggravating sentence.  However, that Ground III was submitted with

28   a large "X" through the page.  In the Court's Screening Order (#6) and Respondents' Answer

(#13), this ground was apparently treated as being deleted and was ignored.  Petitioner has not taken exception to the Order or the Answer.  To the extent that Petitioner intended to continue to assert these claims, parts 1 and 3 are repetitive of Grounds A-8 and A-9, but for the reference to the Eighth Amendment.  Part 2 is conclusory, and fails to identify the nature of the impropriety.  Conclusory allegations that are not supported by specific facts do not merit habeas relief.  *James v. Borg,* 24 F.3d 20, 26 (9th Cir.  1994).

Respondents filed their Answer (#16) on April 17, 2006.  Respondents argue that **grounds A-1, A-3, and A-5** are interrelated attacks on the premeditation element, and they concede these claims were properly exhausted by presentation in Petitioner's appellate brief on direct review.  Respondents argue that **ground A-2 (dismissal of lesser count)** was never presented to the Arizona courts, and is thus not properly exhausted.  Respondents argue that **ground A-4 (juror strikes)** was originally presented by Petitioner as a federal claim in his appellate opening brief, but he shifted to reliance on the more stringent state ground in his reply brief, and therefore it is not properly exhausted.  Respondents argue that **ground A-6 (ineffective assistance)** was not presented to the Arizona Court of Appeals, although it was included in Petitioner's first PCR petition, and therefore is not properly exhausted.  Respondents assert that **ground A-7 (jury misconduct)** is either a conclusory allegation, or if it refers to his claim in his first PCR petition that a juror was sleeping, then it was not properly exhausted by presentation to the Arizona Court of Appeals.  Respondents argue that **ground A-8 (aggravation with element of offense)** was never presented to the Arizona courts, and is thus not properly exhausted.  Respondents concede that **Ground A-9 (*Blakely* claim)** was raised in Petitioner's second PCR Petition and was presented to the Arizona Court of Appeals, but argued that the appeals on that claim are still pending.  Respondents argue that **Ground B (suppression of evidence)** was not presented to the Arizona Court of Appeals, although it was included in Petitioner's first PCR petition, and therefore is not properly exhausted.  Respondents argue that all unexhausted claims are now procedurally defaulted and therefore subject to dismissal with prejudice.

Respondents address the merits of Petitioner's grounds A-1, A-3 and A-5

(premeditation), and grounds A-4 (juror strike) and A-9 (*Blakey* claim).  Respondents assert that these claims are without merit, and must be denied.

Petitioner sought (#17) and obtained (#18) an extension until June 16, 2006 to reply in support of his Petition.  To date, Petitioner has not replied to the Respondents' Answer.

**Supplemental Briefing re Absention** - As of the filing of the Respondents' Answer, the Arizona Court of Appeals had not yet ruled on Petitioner's Petition for Review on his second PCR petition.  Accordingly, the Court directed the parties to supplement their pleadings to address whether this Court should abstain from ruling on this federal habeas petition in light of the still pending state proceedings.  (Order 7/18/6, #19.)  On August 3, 2006, Respondents filed a Supplemental Answer (#20), relating that the Arizona Court of Appeals had since denied Petitioner's Petition for Review.  On August 28, 2006, Petitioner filed a response (#22) asking for a ruling on the merits.

### III. APPLICATION OF LAW TO FACTS

### A.  PROCEDURAL DEFAULT

Respondents argue that Petitioner's Grounds A-2, A-4, A-6, A-7, A-8 and B were never properly exhausted, are now procedurally defaulted, and must be dismissed with prejudice.

### 1.  Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).

Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2002).

Here, Petitioner has failed to properly present his Grounds A-2, A-4, A-6, A-7, A-8 and B. Two of Petitioner's claims, Grounds A-2 and A-8, have never been presented to the Arizona Court of Appeals. Petitioner asserts in his **Ground A-2** that dismissal of the lesser charge by the Arizona Court of Appeals, following Petitioner's conviction on both, was a violation of double jeopardy. Petitioner has never presented this claim to the Arizona courts. Likewise, Petitioner has never presented to the Arizona Court of Appeals his claims in **Ground A-8** that the factors used to aggravate Petitioner's sentence were elements of the crime. Because these claims were never presented to the Arizona courts, they are not properly exhausted.

Three of Petitioner's claims in this habeas case were raised in his first PCR Petition, i.e. Grounds A-6, A-7, and B. Petitioner's argument in his **Ground A-6,** that counsel was ineffective in failing to pursue evidence, *i.e.* surveillance of Petitioner' interrogation, was raised in the PCR petition. Petitioner asserts in his **Ground A-7** a conclusory claim of jury

1   misconduct.  Assuming *arguendo* that this refers to his claim in his first PCR petition that a

2   juror was sleeping, then this claim was also raised in Petitioner's first PCR Petition.  (Exhibit

3   FFF.).  Otherwise, it was not presented at all.  Petitioner asserts in his **Ground B** a violation

4   of the Sixth Amendment based upon the prosecution's suppression of surveillance tapes of

5   Petitioner's interrogation.  This claim was also raised in his first PCR petition.  However,

6   because Petitioner never sought review of the denial of his first PCR petition, none of these

7   claims were properly exhausted by presentation to the Arizona Court of Appeals.  Accordingly,

8   Grounds A-6, A-7, and B  are not properly exhausted

9        One of Petitioner's claims, **Ground A-4 (juror strikes)** was originally presented by

10  Petitioner as a federal claim in his appellate opening brief.  However, Respondents argue that

11  Petitioner shifted to reliance on the more stringent state ground in his reply brief, and

12  therefore this claim is not properly exhausted.  (#16 at 13-15.)

13       Indeed, Petitioner's opening brief relied upon his due process rights under "U.S. Const.,

14  Amends. V (due process clause)", and cited federal authorities, including *Irvin v.  Dowd*, 366

15  U.S. 717 (1961), *United States v. Wood*, 299 U.S. 123 (1936), and *Smith v.  Phillips*, 455

16  U.S. 209 (1982), as well as state authorities.   However, Petitioner also argued that harmless

17  error analysis was not applicable, citing *State v. Huerta*, 175 Ariz. 262, 264, 855 P.2d

18  776,778 (1993).  (Exhibit SS, Opening Brief, at 9.)  In its responsive brief, the state argued that

19  *Huerta* was wrongly decided, and thus harmless error analysis should apply.  (Exhibit TT,

20  Answering Brief,  at 14-15.)  In his Reply Brief, Petitioner argued that the harmless error

21  question was controlled by state law, as determined by the binding precedent in *Huerta*, not

22  withstanding the holding in *United States v.  Martinez-Salazar*, 528 U.S. 304, 317 (2000) that

23  a right to peremptory challenges was not denied when a peremptory challenge had to be used

24  to remove a juror who should have excused for cause.  (Exhibit UU, Reply Brief, at 5-8.)  The

25  Arizona Court of Appeals did not address the harmless error issue, because they found no clear

26  error in the failure to strike the juror.

27       Respondents' arguments confuse the presentation of the standard of review for a claim

28  with the presentation of the claim itself.  Here, the claim presented for habeas review is not

whether harmless error applied to juror strikes, but whether the juror should have been stricken.  Petitioner presented that claim to the state courts.

Moreover, a reply brief which simply acknowledges opposing arguments should not be read as a withdrawal of the claim.  Adopting such an approach would preclude a party from exercising candor with the courts about claims which are not viable under then binding precedent, but which they may be presenting solely for purposes of preserving the claim for subsequent review.  Indeed, Respondents did precisely that in arguing in their Answering Brief that the *Huerta* decision was decided incorrectly.

Finally, the fact that the claim may have never been viable under controlling federal law does not render its presentation ineffective.  All that is required for exhaustion purposes is the presentation of the claim - - viable or otherwise.  Else, the exhaustion of the claim would be subsumed in a determination of whether the claim was meritorious.  Accordingly, the undersigned finds that Ground A-4 was fairly presented.

Respondents concede that **Grounds A-1, A-3, A-5, and A-9** were properly exhausted.

Based upon the foregoing, the undersigned finds that Petitioner has failed to properly exhaust Grounds A-2, A-4, A-6, A-7, A-8 and B.

**2.  Procedural Default**

Respondents argue that all unexhausted claims are now procedurally defaulted and therefore subject to dismissal with prejudice.

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Remedies by Direct Appeal - Under Ariz.R.Crim.P. 31.3, the time for filing a direct

appeal expires twenty days after entry of the judgment and sentence.   The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.   *See generally* Ariz.R.Crim.P. 31.   Accordingly, direct appeal is no longer available for Petitioner's unexhausted claims.

Remedies by Post-Conviction Relief - Further, Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him.

Nor does it appears that such exceptions in Rule 32.1 would apply to Petitioner.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Paragraph (f) has no application where the petitioner filed a timely notice of appeal, and the notice of post-conviction relief of-right applies only to petitions filed following a guilty or nolo contendere plea.  *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right).  *See also Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (on certified question holding that "notice of appeal" in 32.1(f) is direct appeal only, and not appeal from denial of post-conviction relief).  Paragraph (g) has no application where the petitioner has not asserted a change in the law.  Finally, paragraph (h) has no application because Petitioner's claims are not based upon an assertion of facts establishing his innocence, but merely upon various procedural errors.  Accordingly, review through Arizona's post-conviction relief process is no longer possible.[2]

Therefore, Petitioner has procedurally defaulted his Grounds A-2, A-6, A-7, A-8 and B., and as to these Grounds, the Petition must be dismissed with prejudice absent a showing of cause and prejudice or actual innocence.

**3.  Cause and Prejudice**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Petitioner has failed to file a reply to the Respondents' Answer, and has not offered any basis for a finding of cause and prejudice.  The

---

[2]  Moreover, it is likely that Petitioner's claims are barred under Arizona's rules of preclusion.  *See* Ariz.R.Crim.P. 32.2(a).  Because of the limited development of Arizona law on the exception for claims of "sufficient constitutional magnitude", *see Stewart v. Smith,* 536 U.S. 856 (2002), and the applicability of other clear procedural bars, the undersigned does not reach Respondents' argument on the preclusion bar.

undersigned finds none.

**4.  Actual Innocence**

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances.  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Petitioner makes no assertion of actual innocence to excuse his procedural default.

**5.  Summary re Procedural Default**

Based upon the foregoing, the undersigned finds that Petitioner's Grounds A-2, A-6, A-7, A-8 and B are procedurally defaulted, and must be dismissed with prejudice.

**B.  PREMEDITATION: GROUNDS A-1, A-3, and A-5**

Petitioner's Grounds A-1, A-3, and A-5 all center upon the element of premeditation. In **Ground A-1**, Petitioner attacks the statute.  In **Ground A-3**, Petitioner attacks the indictment.  In **Ground A-5**, Petitioner attacks the jury instructions.  Respondents argue that these claims are all without merit.

**Ground A-1: Attack on Statute -** In **Ground A-1**, Petitioner alleges that he was denied due process by the elimination of the distinction in the statutes between first and second degree murder by removal of the reflection requirement from premeditation.  In rejecting Petitioner's challenge to the Arizona statute, the Arizona Court of Appeals relied on the decision in *State v. Thompson,* 204 Ariz. 471, 65 P.3d 420 (2003).  (Exhibit WW at 8.) In *Thompson*, the Arizona Supreme Court resolved a dispute whether 1998 amendments to the Arizona  murder statutes had eliminated the requirement for premeditation to prove first degree murder.  Some Arizona courts had interpreted the statute as simply requiring a passage of time between formulation of the intent and execution, without any requirement for

reflection.  The *Thompson* court concluded that such a construction would render first degree murder the equivalent of second degree murder, and thus the statute would have been vague and therefore a violation of due process.  However, the *Thompson* court concluded that the amendments to the statute continued to require  reflection.  Thus, in Petitioners's case, the Arizona Court of Appeals concluded that the statute, as construed by the *Thompson* decision, was not unconstitutional.  The Petitioner offers no arguments to explain why that decision was incorrect .

To the extent that Petitioner simply asserts that this decision is wrong under Arizona law, he fails to state a basis for habeas relief.  A state court determination of state law is not subject to review in a federal habeas court.  *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the state court's interpretations of state law").   Federal habeas relief is not available for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991).

Moreover, it is not sufficient that a state court decision simply be incorrect under Federal law.  Rather, to be entitled to habeas relief, the Petitioner must show that the  state court's decision  was  "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States".   28 U.S.C. §2254(d)(1).  Petitioner offers no argument or basis for this Court  to conclude that the Arizona Court of Appeals' decision was contrary to or an  reasonable application of such Supreme Court law.   Therefore, Petitioner is not entitled to relief on Ground A-1.

**Ground A-3: Attack on Indictment** - In Ground A-3, Petitioner argues that he was denied due process by the trial court's denial of the motion to strike premeditation language from the indictment.  At trial, counsel argued that the indictments's allegations of  first degree murder were improper, because the Arizona Court of Appeals had determined in *State v. Thompson,* 201 Ariz. 273, 34 P.3d 382 (Ariz.App. Div. 1 2001), that the 1998 amendments to the statute had eliminated premeditation from the elements of first degree murder. (Exhibit D.)  We now know that not only was counsel's  argument wrong, but the Arizona Court of Appeals' decision in *Thompson* was also wrong, as subsequently determined by the Arizona

1    Supreme Court in overturning the lower court in *Thompson*.

2          Although Petitioner addressed  this claim in his direct appeal, the Arizona Court of

3    Appeals did not expressly address Petitioner's attack on the indictment in issuing its opinion.

4    Thus, this Court looks to the decision of the Arizona trial court as the "last  reasoned decision

5    " subject to review.   *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

6          Arguably, the trial court erred when it rejected trial counsel's argument, given that the

7    lower court's decision in *Thompson* remained binding precedent at the time.  The Arizona

8    Supreme Court decision in *Thompson* would not be authored for another year, in 2003.

9    However, this would only render the trial court's decision an error under state law.   As

10   discussed  above, an error of state law does not form the basis for  habeas relief. *Estelle*, 502

11   U.S. 62.   Moreover, Petitioner offers nothing to show that the trial court's decision was

12   contrary to or an unreasonable application of Supreme Court law.

13         Therefore, Petitioner is not entitled to relief on Ground A-3.

14         **Ground A-5: Attack on Jury Instructions** - In his Ground A-5, Petitioner argues that

15   he was denied due process because the trial court employed a defective definition of

16   premeditation in issuing jury instructions.

17         The fact that a jury instruction is allegedly incorrect under state law is not a basis for

18   federal habeas relief. *Estelle*, 502 U.S. at 71-72.  Instructional error will not support a petition

19   for federal habeas relief unless it is shown "not merely that the instruction is undesirable,

20   erroneous, or even `universally condemned,' " but that by itself the instruction "so infected the

21   entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S.

22   141, 146-147 (1973).  Moreover, even in federal prosecutions,  errors in jury instructions are

23   subject to harmless-error analysis, including "the omission of an element from jury

24   instructions." *Neder v. United States*, 527 U.S. 1, 10 (1999).

25         When rejecting this claim, the Arizona Court of Appeals agreed that the jury

26   instructions issued by the trial court were erroneous because, relying on the lower court

27   opinion in *Thompson*, they provided that "proof of actual reflection is not required." (Exhibit

28   WW at 8.)  However, the court went on to conclude that the error in the instruction was

1    harmless, because there was ample evidence that Petitioner had, in fact, premeditated his

2    attempt at murder.  (*Id*. at 9.)

3            A witness testified that appellant threatened to kill Jessie if he
        saw her with another man and, in the same conversation, asked the
4        witness if he could borrow the witness' ID to buy a gun. Moreover,
        Jessie testified at trial that after she locked the gate outside her house
5        late at night and headed back towards the front door, she heard a "rustling
        noise" coming from the side of the house that made her stop and look
6        around. Through the darkness, Jessie saw appellant running towards her
        and pointing a gun in her direction.

7    (*Id*.)  These factual findings are entitled to a presumption of correctness, and may not be

8    rejected by this habeas court absent clear and convincing new evidence, or a showing that they

9    were an unreasonable determination in light of the evidence presented in the state court

10   proceeding.  *See* 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); and *Taylor v. Maddox*, 366

11   F.3d 992 (9th Cir. 2004).  Petitioner offers nothing in the way of new evidence, Nor does he

12   point to anything in the record to show that the Arizona Court of Appeals' factual

13   determination was unreasonable.

14           Similarly, Petitioner offers nothing to show that the conclusion, based on these factual

15   findings, that any instructional error was harmless, was erroneous or was contrary to or an

16   unreasonable application of Supreme Court law.  Having concluded that the evidence in the trial

17   was sufficient for a finding of premeditation, the Arizona Court of Appeals properly concluded

18   that the instructional error harmless.

19           Therefore, Petitioner is not entitled to relief on Ground A-3.

20           **Summary re Premeditation** - Based upon the foregoing, the undersigned concludes

21   that Petitioner's Grounds A-1, A-3 and A-5 are all without merit, and must be denied.

22

23   **C. JUROR STRIKE: GROUND A-4**

24           In his Ground A-4, Petitioner argues that he was denied due process when the trial court

25   denied his motion to strike juror Amy Baratta for cause, requiring the use of a peremptory

26   strike.  Respondents argue that this claim is without merit because, under *United States v.*

27   *Martinez-Salazar*, 528 U.S. 304 (2000), counsel's use of a peremptory strike to remove Ms.

28

1   Baratta cured any error, and under *Ross v. Oklahoma*, 487 U.S. 81, 86-90 (1988), there is no

2   due process right to peremptory challenges, which are a creature of statute and are not required

3   by the Constitution.

4        In denying this claim, the Arizona Court of Appeals found that, contrary to Petitioner's

5   arguments, "Ms. Baratta did not indicate that she was unwilling to remain impartial." (Exhibit

6   WW, Mem. Dec. at 6.) Consequently they concluded that the trial court did not err by failing

7   to excuse her. Therefore, they never reached the issue of what effect such error would have had

8   on Petitioner's peremptory challenges.

9        The question whether a juror was impartial "is not one of mixed law and fact. Rather it

10  is plainly one of historical fact: did a juror swear that he could set aside any opinion he might

11  hold and decide the case on the evidence, and should the juror's protestation of impartiality

12  have been believed." *Patton v. Yount,* 467 U.S. 1025, 1036-1037 (1984).As a question of

13  fact, the state court's determination is entitled to the presumption of correctness under 28

14  U.S.C. § 2254(d). *Austad v. Risley,* 761 F.2d 1348, 1350 (9th Cir. 1985).  Petitioner offers

15  nothing from the record to show that the Arizona court's factual conclusion about the juror's

16  impartiality was clearly erroneous, nor does he proffer any clear and convincing extrinsic

17  evidence to show that it was wrong.

18       In fact, the record supports the state court's conclusion.  At trial, defense counsel

19  questioned the jury panel regarding their feelings about guns. One juror, Terry Hehr, expressed

20  doubt about her ability to remain impartial in a case involving guns, stating "I think I will have

21  a problem [remaining impartial] ."  (Exhibit BB, R.T. 4/17/02 at 116-117 When defense

22  counsel inquired whether anyone else felt likewise, the following dialogue ensued between

23  defense counsel and Juror Amy Baratta:

24          A.  Amie [sic] Baratta. I agree with what she said.
             MR. TARADASH [defense counsel] : Do you think you might
25      have a problem being fair in this case because of your feelings about
        guns?
26          A. I think I would if you have a gun, yes. I think -- I don't know the
        facts or whatever but I mean like I think I feel my understanding would
27      be impartial, yeah. But I think it's unnecessary.
             MR. TARADASH: It may affect your ability to be fair?
28          A.  I cannot say for sure.

(Exhibit BB, R.T. 4/17/02 at 117.)  Thus, although honest about her concern about the effect of her feelings towards guns on her impartiality, Ms.  Baratta did not affirmatively assert that she could or would not be impartial.

Moreover, even if Petitioner could show that the Arizona Court of Appeals was in error to uphold the denial of his motion to strike, Petitioner still would not be entitled to habeas relief.  In *Martinez-Salazar*, the Court found that "unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." 528 U.S. at 311.  Rather, they are creations of the federal and state legislatures, intended to effectuate the Sixth Amendment right to trial by an impartial jury by allowing a defendant to strike a juror who has been improperly allowed to remain impaneled, despite their partiality.  Consequently, the Court concluded that "a defendant's exercise of peremptory challenges ... is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *ld.*  Nor is his right to an impartial jury.  In the instant case, by exercising a peremptory strike to remove Baratta, Petitioner secured what the Constitution assures him: an impartial jury.[3]

Accordingly, the undersigned must conclude that Petitioner's Ground A-4 is without merit.

## D.  *BLAKELY*: GROUND A-9

In his Ground A-9, Petitioner argues he was denied due process when factors used to aggravate Petitioner's sentence were not found by the jury, as required by *Blakely v. Washington*, 524 U.S. 296 (2004).  Respondents concede that this claim is properly exhausted, but properly argue that it is without merit "because the Supreme Court's June 24, 2004 opinion in *Blakely* became the law of the land after Petitioner's conviction became final

---

[3] Arguably, some egregious conduct by the court in denying the motion to strike could result in a due process violation. *Sec, e.g. Martinez-Salazar*, 528 U.S. at 316 (distinguishing cases where "the trial court deliberately misapplied the law in order to force the defendants to use a peremptory challenge to correct the court's error").  Petitioner makes no such allegations.

1   on direct review on February 23, 2004, and the Ninth Circuit has held that *Blakely* cannot be

2   applied retroactively on a collateral review such as habeas corpus." (Answer, #13, at 23 (citing

3   *Schardt v. Payne*, 414 F.3d 1025, 1027 (9th Cir. 2005)).)

4        For retroactivity purposes, a conviction becomes final when the defendant's time for

5   filing a petition for certiorari expires. *Lambrix v. Singletary*,  520 U.S. 518, 527 (1997).

6   Rule 13, Rules of the Supreme Court of the United States, establishes the time limit for filing

7   a petition for a writ of certiorari as being "within 90 days after entry of the order denying

8   discretionary review."  The Arizona Supreme Court denied Petitioner's petition for review on

9   November 24, 2003 (Exhibit AAA).  The Order and Mandate was not issued until December

10  26, 2003 (Exhibit BBB). However, "[t]he time to file a petition for a writ of certiorari runs

11  from the date of entry of the judgment or order sought to be reviewed, and not from the

12  issuance date of the mandate (or its equivalent under local practice)." U.S.S.Ct. R. 13(3).

13  Accordingly, Respondents properly conclude that Petitioner's conviction became final on

14  February 23, 2004, prior to the June 24, 2004 decision in *Blakely*.

15       Moreover, as recognized in *Schardt*, the fact that *Blakely* creates a new rule precludes

16  it from being a "clearly established" rule under 28 U.S.C. § 2254(d)(1). 414 F.3d at 1027.

17  Accordingly, even if *Blakely* could be applied to Petitioner retroactively, it would not entitle

18  Petitioner to habeas relief under limitations of § 2254(d)(1)..

19       Accordingly, this claim is without merit and most be denied.

20

21  **E.  SUMMARY**

22       Based upon the foregoing, the undersigned finds that Petitioner's Grounds A-2, A-6,

23  A-7, A-8 and B are procedurally defaulted, and must be dismissed with prejudice.  Grounds A-

24  1, A-3, A-4, A-5, and A-9 are without merit, and must be denied,

25

26                    **IV.  RECOMMENDATION**

27       **IT IS THEREFORE RECOMMENDED** that Grounds A-2, A-6, A-7, A-8 and B of the

28  Petitioner's Petition for Writ of Habeas Corpus, filed August 22, 2005 (#1) be **DISMISSED**

1   **WITH PREJUDICE**.

2       **IT IS FURTHER RECOMMENDED** that the remainder (Grounds A-1, A-3, A-4, A-5,

3   and A-9) of the Petitioner's Petition for Writ of Habeas Corpus, filed August 22, 2005 (#1)

4   be **DENIED**.

5

6   

**V. EFFECT OF RECOMMENDATION**

7       This recommendation is not an order that is immediately appealable to the Ninth Circuit

8   Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate*

9   *Procedure*, should not be filed until entry of the district court's judgment.

10      However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

11  have ten (10) days from the date of service of a copy of this recommendation within which to

12  file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section

13  2254 proceedings. Thereafter, the parties have ten (10) days within which to file a response

14  to the objections.  Failure to timely file objections to any factual or legal determinations of

15  the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of

16  the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

17

18  DATED: April 20, 2007

19                               JAY R. IRWIN

20                         United States Magistrate Judge

21

22

23

24

25

26

27

28